☑ **Original**       ☐ **Duplicate Original**

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Timing Advance "True Call" area search for all records and<br>unique device/user identifiers pertaining to Timing Advance<br>location information during the dates, times, and geographical<br>boundaries listed in Attachment A | )<br>)<br>)   Case No. 24-926M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 10/7/2024 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.      xx☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Nancy Joseph _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 9/23/2024 @10:58 a.m.
a.m.                                                                      *Judge's signature*

City and state:      Milwaukee, WI                    Honorable Nancy Joseph, U.S. Magistrate Judge
                                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

This warrant applies to a Timing Advance "True Call" and/pr LOCDBOR area search for all records and unique device/user identifiers pertaining to Timing Advance and/or LOCDBOR location information during the following listed dates, times and geographical boundaries (*distance from the GPS points*) of **0.35 Miles** (T-Mobile/US Cellular) and **0.50 Miles (**AT&T):

1. Location #1

GPS Coordinates: 43.066102696257566, -87.90176672883605

Date: August 17, 2024                    Time: 5:15 AM (CST) and 5:35 AM (CST)


2. Location #2

GPS Coordinates: 43.067911047283225, -87.947386973379

Date: August 17, 2024                    Time: 5:30 AM (CST) and 5:40 AM (CST)


3. Location #3

GPS Coordinates: 43.068039489517794, -87.98526643332197

Date: August 17, 2024                    Time: 5:30 AM (CST) and 5:40 AM (CST)


4. Location #4

GPS Coordinates: 43.1194571955115, -88.02578984101764

Date: August 17, 2024                    Time: 10:36 AM (CST) and 10:46 AM (CST)

13

## ATTACHMENT B

### Items and Information to be Seized and Searched

All information that constitutes evidence of a violation of Title 18 U.S.C. § 2119 (carjacking), and Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime) committed on August 17, 2024, involving unknown persons, including location information and identifying information as specified below.

1. T-Mobile/US Cellular/AT&T shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframe(s) listed in Attachment A, including records that identify:

    a. The unique identifiers for each wireless device that generated a Timing Advance "true call" record within the search area for each location, including International Mobile Subscriber Identifiers ("IMSI", International Mobile Equipment ("IMEI"), and the make and model of the device;

    b. The starting and ending date/time of the connection along with the duration, originating/terminating phone numbers, and type of communication (voice/text/data);

    c. For each communication with the network, the tower and the sector(s) (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;

    d. The service type for the communication; and;

14

e.  The estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance "True Call", LOCDBOR records, or similar.

2.  These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

3.  It is anticipated that identifying information will be requested for devices whose characteristics meet any of the following criteria:

    a.  Devices whose cellular network records; including distance from the tower and/or network derived latitude and longitude; are consistent with the facts of the investigation and would not solely reflect a device passing through.

4.  However, it is noted that no subscriber information outside the initial search criteria is authorized by this warrant and additional legal process will be submitted.

15

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) |
| Timing Advance "True Call" area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the dates, times, and geographical boundaries listed in Attachment A | |

Case No. 24-926M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 924(c) | Use of a Firearm during the Commission of a Violent Crime |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

FRANK RUTTER   Digitally signed by FRANK RUTTER
Date: 2024.09.19 15:12:46 -05'00'

*Applicant's signature*

SA Frank Rutter, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone _____ *(specify reliable electronic means)*.

Date: 9/23/2024

*Judge's signature*

City and state:  Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Frank Rutter, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for records and information associated with certain cellular towers ("cell towers") and records generated by the cellular networks that are in the possession, custody, and/or control of T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054; US Cellular, a cellular service provider headquartered at 8410 W. Bryn Mawr Avenue, Chicago, IL; and AT&T, a cellular service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18 U.S.C. §2703(c)(1)(A) to require T-Mobile/US Cellular/AT&T to disclose to the government copies of the information further described in Attachment B.

2.      I am employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 2015.  As an ATF Agent, I have participated in the investigation of firearms-related offenses, including violent crimes such as armed carjackings and robberies, and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm-related offenses and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the

16

actions, habits, traits, methods, and terminology utilized by violators of firearms law and traffickers and abusers of controlled substances.

3.    I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4.    Based on my training, experience, and participation in the investigation of firearms-related offenses and drug trafficking, I know and have observed the following:

5.    I have previously applied for and received search warrants related to cell site data and other related cellphone company records.

6.    There is probable cause to believe that evidence of violations of the following laws of the United States, including the things described in Attachment B, will be found in the property listed in Attachments A, respectively evidence of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime), Title 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm) and Title 18 U.S.C. § 1951 (Hobbs Act Robbery) is housed within the aforementioned cellular device.

7.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

## PROBABLE CAUSE

### August 17, 2024 - Carjacking (Location 1)

1.      Affiant has reviewed Milwaukee Police Department (MPD) reports associated with MPD IR C2408170037 which were related to a carjacking investigation.  Those reports document how on August 17, 2024, MPD responded to an armed carjacking which occurred at 2609 N. Fratney Street, Milwaukee, Wisconsin (Location 1).  Those reports reflect that when officers arrived, they spoke with victim, identified as M.P. who stated he/she was working as an Uber driver when he/she had been carjacked by two unknown black males.

2.      Those reports reflect that M.P. was interviewed by Detective Carloni, who reported M.P. made the following statements: M.P. explained they had been an Uber driver for approximately six years and identified their vehicle as a 2020 Black, Dodge Durango SUV with Wisconsin license plate 700XRF.  M.P. related they had accepted an Uber ride request at approximately 5:15 AM (CST) on August 17, 2024, with a pickup location of 2630 N. Fratney Street in Milwaukee, Wisconsin.  M.P. explained while traveling to pick up the Uber customer they were stopped at a redlight traveling East at the intersection of E. Center Street and N. Holton Street in Milwaukee, Wisconsin.  At this intersection, M.P. explained they observed a black four door sedan with heavy window tints stopped at the same traffic light facing South. When M.P. received the green light to proceed East through the intersection, M.P. observed the aforementioned black sedan disregard the red traffic light, make a left turn to follow M.P. East on E. Center Street.  M.P. stated they turned South on N. Fratney Street and pulled over in front of 2609 N. Fratney Street to pick up the Uber customer.  At this time, M.P. explained the black sedan slowly drove by before turning West onto E. Clarke Street.  M.P. recalled a "short time" later someone (Suspect 1) approached his/her vehicle after coming from the Northwest corner of

3

N. Fratney Street and E. Clarke. M.P. stated Suspect 1 approached his/her vehicle with a silver handgun pointed at him/her. M.P. explained Suspect 1 knocked on the vehicle window with the handgun and demanded the victim exit the vehicle and give up the vehicle keys. M.P. explained he/she complied with the request and began walking North on N. Fratney Street away from his/her vehicle. M.P. recalled hearing Suspect 1 yell for Suspect 2 to get in the vehicle. M.P. stated they observed Suspect 2 come from the West alleyway on N. Fratney Street and enter the passenger seat of M.P.'s vehicle. Suspect 1 entered the driver's seat and the vehicle fled South on N. Fratney Street before turning and going West on E. Clarke Street.

3.     Detective Carloni further reported that M.P. described Suspect 1 as a black male, approximately 20 years old, 5'7" to 5'8", thin build with a short afro and a dark complexion. M.P. stated Suspect 1 was wearing a black sweatshirt with the hood cinched around their face and was armed with a silver handgun.

4.     Detective Carloni reported that M.P. described Suspect 2 as a black male but could not provide any further detail.

5.     Detective Bongel was assigned video-surveillance follow up and reported he recovered video surveillance footage from nearby store, Riverwest Co-Op located at 733 E. Clarke Street. SA Rutter obtained a copy of these recordings and reviewed them which depicted the following: the victim's vehicle can be observed traveling South on N. Fratney Street before pulling alongside the West curb and facing South. Review of the surveillance cameras revealed the suspect's vehicle, a dark four door sedan passed the victim's vehicle traveling South on N. Fratney Street where it then turned West onto E. Clarke Street. The suspect vehicle could be seen stopping in front of 726 E. Clarke Street where two suspects (both passengers) exited the vehicle and began walking towards and then North on N. Fratney Street towards the victim's

4

vehicle. The suspect vehicle can be further described as a black, four door sedan with window tints. The vehicle appeared to have dark wheels and a license plate affixed to the front and rear bumpers. Below is a picture of the suspect vehicle taken from the surveillance footage.



6.      That video further shows both suspects to be wearing dark clothing. The two suspects can be seen on video approaching the victim's vehicle before committing the carjacking. Suspect 1 approached the driver's side of the vehicle and could be seen raising their arm towards the vehicle as they neared. It should be noted the victim previously related to Detective Carloni that Suspect 1 pointed a firearm at them while approaching. Suspect 2 approached the passenger side of the vehicle. After depriving the victim of their property, Suspect 2 could be seen fleeing on foot back to the suspect vehicle and Suspect 1 drove the victim's vehicle south on N. Fratney Street and then west on E. Clark Street where it passed the suspect vehicle. Both vehicles traveled West on E. Clarke Street to flee the area.

**August 17, 2024 – Fleeing/Eluding (Location 2 and 3)**

7.      Affiant further reviewed MPD reports associated with MPD IR C2408170036 which were related to a fleeing/eluding offense from that same date involving the victim's vehicle after the carjacking. Those reports reflect that MPD Squad 5340 was dispatched to assist

5

with the aforementioned carjacking incident. Officer Roembke reported that while traveling to the site of the carjacking with his partner Officer Gregory, they observed the black Dodge Durango headed West on W. Center Street at the intersection of N. 27th Street in Milwaukee. The driver of the Dodge Durango immediately started accelerating at a high rate of speed headed west from N. 27th Street (Location 2). MPD officers activated their emergency lights and siren to affect a traffic stop, but the driver refused to stop while accelerating to even higher speeds. The vehicle pursuit continued for 1.9 miles as the driver disregarded red traffic lights and stop signs. MPD lost sight of the Dodge Durango on N. Appleton Avenue and W. Center Street in Milwaukee, Wisconsin (Location 3). The vehicle's speed reportedly reached over 90 miles an hour and included driving on the wrong side of the road.

### August 17, 2024 – FLOCK hit (Location 4)

8.      On August 17, 2024, at approximately 10:41 AM (CST), the victim's vehicle was recorded by an automated license plate reader traveling North on N. 91st Street through W. Silver Spring Drive in Milwaukee, Wisconsin (Location 4). SA Rutter learned this information through a license plate query in the FLOCK system.



**August 18, 2024 – Vehicle Recovery**

9.    On August 18, 2024, MPD responded to the area of 5722 N. 84th Street in Milwaukee, Wisconsin after receiving information that the Dodge Durango was pinging there. This information was documented in a report written by Officer Leidy under MPD IR C2408170037.  The report stated upon arrival, Officer Leidy and Officer Rummel located the victim's vehicle parked directly across from 5722 N. 84th Street.  The vehicle was observed to have a red dealership placard on the rear bumper and the white stripes on the hood had been removed.  Officers conducted surveillance of the vehicle and observed an unknown black male subject wearing a black zip-up hooded sweatshirt and black jogging pants with a blue stripe down the exterior of both legs exit the south door of 8500 W. Fond Du Lac Avenue.  Officers observed the unknown black male approach the vehicle where the subject appeared to take a photo of the vehicle. The subject then re-entered into the building. Officers continued to monitor the vehicle but ultimately decided to approach and recover the vehicle.  The vehicle was recovered and towed as evidence without incident.

**Vehicle Processing**

10.    On August 19, 2024, Detective Barker responded to MPD's tow lot to process the recovered vehicle with Forensic Investigator Roeglin.  Detective Barker's report detailed several items of evidentiary value were recovered from the vehicle including, but not limited to, an iPhone (**TARGET CELL PHONE**) with an unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24023778, Item 1. Photographs of the recovered device showed it to be blue and without a protective case.  It should be noted the victim previously described their personal device as a black iPhone housed within a red and black Air Jordan branded protective case.  Investigator Roeglin also obtained 7 DNA swabs and 12 latent

7

print lifts. Those prints were compared to a database of known fingerprints and that analysis identified two such latent prints (from the driver's door window and the rear driver's side door) as that of Michael A. Johnson (DOB: XX/XX/2005).

**Michael A. Johnson**

11.    Affiant has reviewed of Wisconsin Circuit Court records revealed Michael A. Johnson received an adult felony conviction under Milwaukee County Case 2021CF000045 for violating Wisconsin statute 940.20(1) – Battery by Prisoners. This conviction prohibits Michael A. Johnson from legally possessing firearms.

12.    Additionally, Michael A. Johnson has numerous juvenile felony convictions:

- 2022JV000327 – Armed Robbery, 943.32(2)
- 2020JV000529 – Robbery with Use of Force (943.32(1)(a)), Drive or Operate Vehicle w/o Consent (943.23(3))
- 2019JV000362 – Drive or Operate Vehicle w/o Consent (943.23(3))
- 2018JV000716A – Operate Vehicle w/o Consent-Passenger (943.23(4m))
- 2018JV000716 – Robbery with Use of Force (943.32(1)(a)), Operate Vehicle w/o Consent-Passenger (943.23(4m))

13.    Your affiant is aware on August 26, 2024, Detective Carloni showed a photo array to the victim which included a photograph of Michael A. Johnson. This event is memorialized in report associated with MPD IR C2408170037. Additionally, it should be noted the victim did not identify anyone in the photo array. Your affiant is aware one of the suspect's was previously described as having their hood up and cinched around their face during the carjacking. This manner of facial obstruction could have limited the victim's ability to get a strong look at the suspect's face during the crime.

8

## TECHNICAL INFORMATION

14.     In my training and experience, I have learned that T-Mobile/US Cellular/AT&T are companies that provides cellular communications service to a significant percentage of the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data.  When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it. Additionally, cellular service providers such as T-Mobile, US Cellular, and AT&T also capture historical location data that is generated and derived from a cellular device's interaction with the cellular network. This information may include but not be limited to a cellular device's distance from a particular cell tower and network derived location, which are generally estimates, of the device in latitude and longitude.

15.     Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

16.     Based on my training and experience, I know that cellular providers such as T-Mobile/US Cellular/AT&T in their regular course of business maintain certain types of location data associated with a cellular device based on that cellular device's interaction with the cellular network. For these interactions with the cellular network these records may include unique identifiers for the wireless device that interacted with the network ("the locally served wireless device'); the date, time and duration of the interaction with the network; the cell tower and sector (i.e. face of the tower) that was involved; the distance from the tower and sector that the cellular device was located; and the estimated latitude and longitude of the cellular device. The aforementioned location information is often contained within Timing Advance data, also known as True Call, and/or LOCDBOR data that is captured and controlled by T-Mobile/US Cellular/AT&T.

17.     Furthermore, your affiant also notes that information about each transaction, such as the originating and destination phone numbers, duration, date/time, and tower/sector utilized for voice and text communications is also retained in the normal course of business and can be provided in response to this warrant.  Your affiant notes that US Cellular is the provider that will provide voice and text activity in response to an area search based on their processing of the request.  The information provided by US Cellular is limited to only the cell sites that are identified within the initial area search parameters.

18.     Your affiant notes that that in speaking with experts in the field of historical call detail record analysis that the estimated latitude and longitudes of a device on the AT&T network can be sourced from multiple inputs that may vary largely in their precision.  Due to these estimations, a larger search area is being requested due to these variances in the precision.

10

19.     Your affiant notes that while the search radius will be larger for AT&T due to the source of the data that the information will only look for those devices consistent amongst multiple locations and/or consistent with the facts of the crime.  Additionally, this information will not be utilized for any further purpose outside the authorization within this warrant.

20.     Based on my training and experience and the above facts, information obtained from cellular service providers, such as T-Mobile/US Cellular/AT&T, reveal cell towers (and, where applicable, sectors) that were used and the estimated location information (the distance from the tower and sector and estimated latitude and longitude) of a given cellular device engaged in a particular communication or interaction with the cellular network can be used to show that the device was in the general vicinity of the cell tower or an estimated location at the time the communication or network interaction occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of:

- Location 1 – 2609 N. Fratney Street, Milwaukee, Wisconsin, 43.066102696257566, -87.90176672883605, on August 17, 2024, between 5:15 AM and 5:35 AM (CST)

- Location 2 – Intersection of N. 27th Street and W. Center Street, Milwaukee, Wisconsin, 43.067911047283225, -87.947386973379, on August 17, 2024, between 5:30 AM and 5:40 AM (CST);

- Location 3 – Intersection of W. Appleton Avenue and W. Center Street, Milwaukee, Wisconsin, 43.068039489517794, -87.98526643332197, on August 17, 2024, between 5:30 AM and 5:40 AM (CST);

- Location 4 – Intersection of N. 91st Street and W. Silver Spring Drive, Milwaukee, Wisconsin, 43.1194571955115, -88.02578984101764 on August 17, 2024, between 10:36 AM and 10:46 AM (CST).

21.     Probable cause exists to believe that the records requested contain evidence related to identifying the unknown individuals who committed violations of Title 18 U.S.C. §

2119 (carjacking) and Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime).

## AUTHORIZATION REQUEST

22.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to title 18 U.S.C. §2703(c) and Federal Rule of Criminal Procedure 41.

23.    I further request that the Court direct T-Mobile/US Cellular/AT&T to disclose to the government any information described in Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile/US Cellular/AT&T, who will then compile the requested records at a time convenient to it, reasonable cause to permit the execution of the requested warrant at any time in the day or night.

24.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

12

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

     This warrant applies to a Timing Advance "True Call" and/pr LOCDBOR area search for all records and unique device/user identifiers pertaining to Timing Advance and/or LOCDBOR location information during the following listed dates, times and geographical boundaries (*distance from the GPS points*) of **0.35 Miles** (T-Mobile/US Cellular) and **0.50 Miles (**AT&T):

    1. <u>Location #1</u>

GPS Coordinates:  43.066102696257566, -87.90176672883605

Date: August 17, 2024                Time: 5:15 AM (CST) and 5:35 AM (CST)


    2. <u>Location #2</u>

GPS Coordinates:  43.067911047283225, -87.947386973379

Date: August 17, 2024                Time: 5:30 AM (CST) and 5:40 AM (CST)


    3. <u>Location #3</u>

GPS Coordinates:  43.068039489517794, -87.98526643332197

Date: August 17, 2024                Time: 5:30 AM (CST) and 5:40 AM (CST)


    4. <u>Location #4</u>

GPS Coordinates:  43.1194571955115, -88.02578984101764

Date: August 17, 2024                Time: 10:36 AM (CST) and 10:46 AM (CST)

## ATTACHMENT B

### Items and Information to be Seized and Searched

All information that constitutes evidence of a violation of Title 18 U.S.C. § 2119 (carjacking), and Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime) committed on August 17, 2024, involving unknown persons, including location information and identifying information as specified below.

1. T-Mobile/US Cellular/AT&T shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframe(s) listed in Attachment A, including records that identify:

    a. The unique identifiers for each wireless device that generated a Timing Advance "true call" record within the search area for each location, including International Mobile Subscriber Identifiers ("IMSI", International Mobile Equipment ("IMEI"), and the make and model of the device;

    b. The starting and ending date/time of the connection along with the duration, originating/terminating phone numbers, and type of communication (voice/text/data);

    c. For each communication with the network, the tower and the sector(s) (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;

    d. The service type for the communication; and;

14

e. The estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance "True Call", LOCDBOR records, or similar.

2. These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

3. It is anticipated that identifying information will be requested for devices whose characteristics meet any of the following criteria:

a. Devices whose cellular network records; including distance from the tower and/or network derived latitude and longitude; are consistent with the facts of the investigation and would not solely reflect a device passing through.

4. However, it is noted that no subscriber information outside the initial search criteria is authorized by this warrant and additional legal process will be submitted.